UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PATRICIA P.,

                 Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

Case No. 3:23-cv-05023-TLF

ORDER REVERSING AND REMANDING FOR AWARD OF BENEFITS

## I.    BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's December 27, 2016 application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the Administrative Law Judge's (ALJ) decision finding that plaintiff was not disabled. Dkt. 4, Complaint.

On July 19, 2012, after a hearing before ALJ Michael C. Blanton, the Commissioner found that plaintiff was disabled as of August 24, 2010, and awarded SSI benefits. AR 477-486. The ALJ found plaintiff's mental health impairments caused limitations that met the criteria of section 12.04 and 12.06 of 20 C.F.R. 404 Subpart P, Appendix 1 (416.920(d) and 416.925). AR 483-485. The ALJ recommended

appointment of a representative payee, and continuing disability review in 24 months. AR 486.

Plaintiff was incarcerated for almost three years[1], and after her release in 2016 she applied again on January 20, 2017, with an alleged onset date of December 27, 2016,[2] for SSI benefits. AR 579, 598. Plaintiff appealed the denial of her application for benefits, and the hearing was held by Administrative Law Judge Allen G. Erickson on September 18, 2018. AR 415-176.

The ALJ found plaintiff was not disabled; plaintiff filed a complaint with this Court and the Honorable Michelle L. Peterson reversed and remanded the ALJ's decision. *Patricia P. v. Commissioner of Social Security,* No. C20-5230-MLP, 2020 WL 7488814 (December 21, 2020). Judge Peterson found the ALJ erred by failing to provide clear and convincing reasons to discount plaintiff's statements and testimony. 2020 WL 7488814 at *4-5. Judge Peterson also found error with respect to the ALJ's assessment of medical opinions by Dr. Flanagan and Dr. Kester; but Judge Peterson found the ALJ did not err when discounting Dr. Kimberly Wheeler's (examining doctor) August 2018 opinion, based on a one-time observation by Dr. Wheeler being inconsistent with repeated observations in relevant medical records. *Id.* at *2-*3. Judge Peterson also found no error regarding the ALJ's decision to discount the December 2016 opinions of non-examining doctor, Dr. Phyllis Sanchez. *Id.* at *3.

---

[1] Benefits ceased after plaintiff became incarcerated. 2020 WL 7488814, at *1; AR 1244. The precise start and end dates of incarceration are not clear from the record. AR 1245.

[2] The original date of alleged onset was August 24, 2010, but after incarceration it was modified to the date she would qualify to receive benefits after being released. AR 579.

On March 4, 2021, the Appeals Council ordered a remand and ALJ Allen G. Erickson held two hearings. AR 1282-1349. On October 17, 2022, ALJ Erickson issued a written decision finding plaintiff was not disabled. AR 1233-1281.

The ALJ found plaintiff had the following severe impairments: major depressive disorder with psychotic features, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and personality disorder. AR 1239. The ALJ found that plaintiff had the residual functional capacity to: "perform a full range of work at all exertional levels but with the following non-exertional limitations. She can understand, remember, and apply short, simple instructions. She can perform routine, predictable tasks. She can make simple decisions. She can work in an environment without fast-paced production demands. She can be exposed to few, routine workplace changes. She can have no interaction with the general public. She can have occasional interaction with supervisors and a limited number of co-workers." AR 1244. This RFC is almost verbatim the same as the RFC decided by the ALJ on January 3, 2019 after the first hearing. AR 403. The only change is in the interaction with others in the workplace, the previous RFC stated, "[plaintiff] . . . can occasionally interact with co-workers" and did not mention supervisors. *Id.*

## II.   DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct.

3

1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

**A. Plaintiff's statements regarding symptoms and limitations**

Plaintiff asserts that the ALJ erred by rejecting her statements about severity of symptoms and limitations concerning her mental health conditions. Dkt. 17, Plaintiff's Opening Brief, at 14-17. The defendant contends there was substantial evidence to support the ALJ's reasoning, because the medical record does not align with plaintiff's statements; and because plaintiff's activities were beyond what she would have been capable of if her statements about severity of symptoms and limitations were accurate. Dkt. 20, Defendant's Brief, at 3-5.

The ALJ erred by discounting plaintiff's statements about her symptoms and limitations as not credible. The AL did not make any finding of malingering. The ALJ did not identify specific statements made by plaintiff that were less than credible; there are simply general observations in the ALJ's decision -- based on the fact that she was calm and pleasant in her interaction with medical providers during appointments, and that there was evidence in the medical record that her symptoms improved over time. AR 1245, 1252.

The ALJ also stated that plaintiff "had difficulties explaining her mental health symptoms. She testified that she has difficulties with diminished memory and auditory

4

hallucinations." AR 1244. The ALJ also found that plaintiff was not credible because her activities of daily living were not consistent with the level of difficult symptoms she said she was experiencing. AR 1245. Yet the records of plaintiff's daily living show that she was not leaving her residence except for basic necessities, to attend medical appointments or treatment for her substance use disorder, she did not interact with people except family and a few friends, and did not make it to a number of appointments because her memory was failing.

The ALJ recognized that plaintiff's medical record shows a pattern from the start of the relevant period (December 27, 2016) through the date of the ALJ's decision (October 20, 2022), of plaintiff's recurring panic attacks, that plaintiff experienced auditory hallucinations, and that plaintiff's symptoms waxed and waned during treatment. AR 1245-1265. The ALJ stated that there were evaluation notes commenting that plaintiff did not give full effort, and the ALJ observed that "claimant was difficult and answered questions with, 'I don't know' during an evaluation". AR 1264 (referring to the evaluation by Dr. Ruddell on March 30, 2022. AR 4466-4470). A few weeks after the August 4, 2022 hearing, on September 15, 2022, at an ER visit, Dr. Natalie Reynolds noted, "patient is bipolar and is a very difficult historian", and also observed, "patient is very slow to answer questions, occasionally answers nonsensically". AR 5730-5731. Other notes from care providers in the ER indicated on September 15, 2022 plaintiff was malnourished – she appeared to be in a depressed state; she was taking a long list of medications; due to chronic illness she had not been eating. AR 5740-5772.

The ALJ's observation that plaintiff was not able to answer clearly is explained by medical evidence in the record, and is not a reason to find plaintiff less than credible.

5

Symptoms of mental illness may increase and decrease in severity; changes in plaintiff's mental state are not clear and convincing reasons to discount her credibility. *See Garrison v. Colvin,* 759 F.3d 995, 1017-1018 (9th Cir. 2014) (data points chosen by the ALJ to illustrate why they find plaintiff less than credible must be examples of a broader development).The ALJ did not provide clear and convincing reasons, based on substantial evidence in the record, for rejecting plaintiff's testimony or statements.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).  In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ must identify the testimony found to be not credible, and can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Laborin v. Berryhill,* 867 F.3d 1151, 1155 (9th Cir. 2017); *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

6

1    Treatment records must not be cherry-picked; the ALJ must consider a particular record
2    of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.
3         An ALJ may discount a claimant's testimony based on daily activities that either
4    contradict their testimony or that meet the threshold for transferable work skills. *Orn v.*
5    *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).
6         In this case, plaintiff testified that she experienced panic attacks, racing thoughts,
7    distraction, lack of energy, and difficulty being around people. AR 452-453, 457-458,
8    464-466, 623-628, 655. Plaintiff testified that she experienced memory problems, and
9    anxiety. AR 1340.
10        She stated in a function report dated February 8, 2017, that she had nightmares,
11   flashbacks, and a racing mind, that interfered with sleep; she was only able to
12   accomplish the bare minimum of daily activities, such as making a sandwich or cleaning
13   up after herself for 30 to 60 minutes, shopping for groceries, going to medical
14   appointments or church. AR 625-627, 652-654. She also stated that she only went out
15   twice a week, she did not drive, and would shop only once per month. AR 626. She
16   stated she could only pay attention for four minutes. AR 628.
17        Plaintiff also testified that a couple of months prior to the August 2022, hearing,
18   she enrolled at Tacoma Community College to obtain her GED. AR 1311-1312. But the
19   GED program did not allow her to complete the course – she stated that she could not
20   attend, she was not able to do the work, she could not understand it, and could not get
21   the work done – she said she was unable to concentrate at all, and she was sick. AR
22   1313-1314. She said her back, stomach, eyes, and head would hurt; she could not
23   focus. AR 1314.

Plaintiff testified during the August 2022 hearing that her mental health symptoms had become worse since the previous hearing. AR 1337. She stated she heard voices – every day, happening mostly at night -- telling her to do things. She testified that when she took medication, it helped with the voices. AR 1337-1338. But she also testified the medication caused side effects, such as blackouts, waking up at night and doing odd things, feeling that her body would want to "jump up and do stuff". AR 1339. Plaintiff testified that she "can't focus. I feel like I am – I don't know. There is times I feel like I am – I can't concentrate. I feel like I am going to freak out. I don't know." AR 1337.

Plaintiff also testified that she thought she had been diagnosed with fibromyalgia, and with migraines, and had taken medicines for those conditions; but she also stated "I don't remember. I do see a lot of specialists. It is hard for me to cope with this stuff because then I am confused. I go to so many. It seems like you think I am lying but I am not lying, I am telling the truth." AR 1325-1326. When the ALJ asked whether plaintiff gave a poor effort in medical testing, plaintiff said, "I don't know what that means." AR 1328. The ALJ rephrased the question and plaintiff indicated that she disagreed with the characterization that she had intentionally not participated fully in the test. AR 1328. Plaintiff responded by asking the ALJ, "why are you picking on me?" AR 1329. Plaintiff also stated that she had recently been sick with COVID-19. AR 1330. Plaintiff said she was not sure whether her recent headaches had been from the COVID-19 illness. AR 1331. She testified that she had migraine headaches once or twice per month, every month. AR 1336.

Plaintiff indicated that she was living with her daughter and baby granddaughter. AR 1331. When her daughter left for work, the plaintiff's granddaughter would stay with the baby's father. AR 1332. Plaintiff testified that she did not babysit her granddaughter, due to plaintiff's medical conditions. AR 1333. Plaintiff stated that her other daughter likewise would not leave grandchildren with her, due to plaintiff's medical conditions. AR 1335.

The medical records show that plaintiff engaged in psychotherapy and took a variety of medications for anxiety, depression, PTSD, substance use disorder, and other diagnosed mental health conditions such as bipolar disorder, and schizoaffective disorder, from the time she was released from prison in December 2016, through September 2022. AR 785-820, 849-850, 872-892, 895, 899, 902-915, 1067, 1087-1108 (mental health treatment records during 2017-2018 after release from prison), 1880-1906 (records of medication management and psychotherapy appointments in January and February 2019); AR 2389-2502, 2543-2585, 2715-2750 (medical records of medication management and notes showing plaintiff's symptoms waxed and waned during 2020 but were significantly worse in December 2020); AR 2624-2627, 2645 (acute anxiety attack in January 2021, plaintiff goes to the emergency room); AR 2756-2798, 2857-2863, 3013-3014, 3028, 4124-4144 (records showing some progress in early to mid-2021, but plaintiff continues to experience times of "really bad" anxiety where she cried all day [AR 2857-2863], and symptoms such as hallucinations every other day where her deceased brother tells her to self-harm [AR 3013-3014, June 22, 2021].

In July, August, and September 2021, plaintiff's symptoms continued to be expressed as anxiety, hallucinations, depression and feeling so stressed she could not study for her high school equivalency degree. AR 3301-3305. A treating provider (Vanessa Cray, MMHNP) stated in November 2021 that due to her mental health conditions and symptoms of ongoing, recurring, chronic depression, anxiety, mood lability, intermittent hallucinations --plaintiff had many work-related limitations; and plaintiff would be absent from work for five or more days each month, and would be off-task more than 30% of an eight-hour workday, five days a week. AR 3997-4000.

On January 31, 2022, plaintiff (then age 44) stated to a mental health counselor (during a remote interview by phone for COVID-19 precaution, with Angela Jutxus, MA LSWAIC), that, she dropped out of school in eighth grade. AR 4388. She had self-harmed from ages 19-20, cutting legs and hands. She attempted suicide at age 37. She reported that she experienced (in January 2022) racing thoughts, nightmares, insomnia, social withdrawal, sense of hopeless about her future. AR 4389. Her parents were alcoholics and abused each other, a babysitter had sexually abused plaintiff before she was five years old, and her boyfriend had beat her and would not allow her to leave the house. They had two children together, both of whom are now adults. AR 4388-4390. Later she had two children with another partner, and those children were placed in foster care; later her adult daughter adopted those two children. AR 4389. She stated that her father had died of cancer three years ago, and her brother had committed suicide by hanging two years ago. AR 4388. The intake evaluator commented that plaintiff "sounded sad, confused, and had disorganized speech and thinking patterns." AR 4397.

Between February and late May, 2022, the medical records indicate that plaintiff was experiencing hallucinations (AR 4453-4455, 4554, 4743, 4747-4752); she tearfully told a counsellor in April 2022, she was forgetful, was having difficulty concentrating, gets "lost in her mind", and could not remember her medical appointments. AR 5056-5057.

In late May, 2022, plaintiff's 25-year-old daughter told Vanessa Cray, a treating provider, and Dr. Jennifer Guyant, an emergency room physician, that plaintiff's mental health symptoms seemed to be getting much worse – including bizarre behavior, agitation, extreme anxiety. AR 4739, 5115. Although plaintiff was initially admitted to the hospital for a mental health evaluation on May 26, she returned home that day – but her daughter took her back to the emergency room on May 28, 2022 and she remained hospitalized until May 31, 2022. AR 5064-5074. Her daughter told ER doctors that plaintiff was hallucinating, could not take care of herself (not showering), plaintiff was unsteady on feet, was not making sense, and appeared to be sleepwalking or dissociating. AR 5064.

Plaintiff had initially been referred for involuntary mental health treatment but no bed was available; on May 31 her symptoms had become more manageable and she returned home. AR 5070-5074. During the 12-month period ending 7-6-2022, there were 17 times plaintiff was in the ER. AR 5277-5281. Plaintiff was experiencing symptoms of anxiety, depression, and drug induced akathisia. AR 5407-5414, 5730-5778, 5811. On September 15, 2022, at another ER visit, Dr. Natalie Reynolds noted, "patient is bipolar and is a very difficult historian", and also observed, "patient is very slow to answer questions, occasionally answers nonsensically". AR 5730-5731. Other

notes from care providers in the ER indicated on September 15, 2022 plaintiff was malnourished – she appeared to be in a depressed state; she was taking a long list of medications; due to chronic illness she had not been eating. AR 5740-5772.

The ALJ erred by rejecting plaintiff's testimony and statements about symptoms and work-related limitations. Although plaintiff's symptoms waxed and waned at times, there was a progression of anxiety, depression, medication side effects, and hallucinations, that waxed and waned but also became worse over time. There is not substantial evidence, nor clear and convincing reasons, for the ALJ to reject plaintiff's statements and testimony.

**B. Medical evidence.**

Plaintiff asserts the ALJ erred by failing to provide legally sufficient reasons, supported by substantial evidence, for discounting the medical opinions of Dr. Kimberly Wheeler, Ph.D., Dr. Phyllis Sanchez, Ph.D., or Dr. Alysa Ruddell, Ph.D. Dkt. 17, Plaintiff's Opening Brief, at 4-14.

Plaintiff filed their application prior to March 27, 2017, therefore under the applicable regulations, an ALJ was required to provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

    1.  <u>Dr. Kimberly Wheeler, Ph.D.</u>

Judge Michelle L. Peterson previously decided the ALJ did not err when discounting Dr. Wheeler's opinions from an August 2018 evaluation. *Patricia P. v. Commissioner of Social Security,* No. C20-5230-MLP, 2020 WL 7488814 (12-21-2020) at *2-*3. Among the reasons given by the ALJ for discounting Dr. Wheeler's opinions, approved by Judge Peterson, was that repeated consistent observations throughout the record were inconsistent with Dr. Wheeler's one-time observation and assessment.

Although there has been additional evidence entered into the record after the date of Dr. Wheeler's first assessment, Judge Peterson's decision was based on the

same evidence this Court has reviewed, during the period of Dr. Wheeler's first evaluation, in August 2018. AR 1198-1202. This Court will not re-iterate the reasoning of Judge Peterson; the Court agrees with and adopts her reasoning for purposes of the current appeal.

Regarding Dr. Wheeler's second examination and assessment of plaintiff (AR 2293-2297), on March 13, 2020, Dr. Wheeler found plaintiff's depression had become worse since the previous examination. AR 2296. Dr. Wheeler determined that plaintiff's limitations were severe overall, and specifically found the following areas of severe limitations: performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances without special supervision; ability to communicate and perform effectively in a work setting; ability to complete a normal workday and work week without interruptions from psychologically based symptoms. AR 2295. Dr. Wheeler found a marked limitation in plaintiff's ability to adapt to changes in a routine work setting and in plaintiff's ability to ask simple questions or request assistance. AR 2295. Dr. Wheeler found the impairments and limitations would last 60 months, or permanently. AR 2295.

Dr. Wheeler's second assessment is supported by the medical record. See AR 4398-4406 (evaluation and outpatient therapy notes, dated 2-1-2022). Dr. Wheeler's evaluation and assessment is consistent with, and corroborated the opinions of Dr. Ruddell. AR 4465-4471 (assessment dated 3-30-2022). For example, therapy notes and medication appointments during 2019-2020 show plaintiff was continuing to experience severe anxiety, lack of progress, saying "I don't know" to many questions, having auditory hallucinations of her brother, who was deceased, talking to her once per week

and sometimes more often. AR 2421, 2426-2429, 2446-2448, 2451, 2489-2493, 2499. Plaintiff reported side effects from psychotropic medications, such as being groggy. AR 2490. The treatment records show periods of worse symptoms and times where there was improvement, and the overall diagnostic and follow-up documentation shows waxing and waning of severity but the impairments were progressively getting worse. The longitudinal treatment record is consistent with Dr. Wheeler's second assessment.

Regardless of whether the Court applies the clear and convincing standard, or the specific and legitimate standard, the ALJ erred by discounting Dr. Wheeler's 2020 opinions.

### 2. Dr. Phyllis Sanchez, Ph.D.

Judge Michelle L. Peterson previously decided the ALJ did not err when discounting Dr. Sanchez's opinions, dated November 21, 2016, AR 714-717. *Patricia P. v. Commissioner of Social Security,* No. C20-5230-MLP, 2020 WL 7488814 (12-21-2020) at *3-*4. This Court will not re-iterate the reasoning of Judge Peterson; the Court agrees with and adopts her reasoning for purposes of the current appeal.

### 3. Dr. Alysa A. Ruddell, Ph.D.

Under either the clear and convincing, or the specific and legitimate standard, the ALJ erred by discounting Dr. Ruddell's opinions. Dr. Ruddell evaluated plaintiff on March 30, 2022. AR 4466-4470. Plaintiff stated that she had five children but could not recall the years they were born, or their ages. AR 4466. She knew she had been in prison but could not recall the dates. AR 4467. Plaintiff explained that she had hallucinations such as seeing "black things." AR 4469. She reported auditory hallucinations as well. *Id.* Dr. Ruddell made clinical findings of marked anxiety and

marked depression, and diagnosed major depression, with an over-all severity rating of 4, marked. AR 4467. Dr. Ruddell assessed one severe limitation: plaintiff's ability to "understand, remember, and persist in tasks by following detailed instructions." AR 4468. In addition, Dr. Ruddell made findings of several marked limitations: plaintiff's ability to perform activities on schedule, regularly attend work, and to be punctual; plaintiff's ability to learn new tasks; plaintiff's ability to adapt to changes in a routine work setting; plaintiff's ability to complete a normal workday, work week, "without interruptions from psychologically based symptoms", and plaintiff's ability to set realistic goals and plan independently. AR 4468.

Dr. Ruddell determined that effects on plaintiff's basic work activities were not the result of a substance use disorder; but Dr. Ruddell also recommended chemical dependency assessment or substance use treatment. AR 4468. Dr. Ruddell opined the impairments would remain for at least 12 months, with available treatment. *Id.*

Dr. Ruddell's assessment is consistent with the medical records during the relevant period. As described above, plaintiff's condition became so difficult during 2021-2022 that she was in the emergency room multiple times, and was hospitalized in May of 2022 due to the severity of her mental health conditions.

**C.  Harmless error**

The errors of the ALJ in this case were not harmless. An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id* at 1052, 1054; *see also, Carmickle v.*

1  *Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849

2  F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th

3  Cir. 2021) (unpublished).

4      The ALJ's hypothetical for the Vocational Expert (VE) referred to limitations that

5  were later reflected in the RFC. See AR 1341-1345. In addition, the ALJ asked the VE

6  whether, if a person missed more than one workday per month, needed more than the

7  customary number and length of breaks during each workday, and would be

8  consistently off-task more than 15% of the workday, would that person be able to

9  sustain full-time employment; the VE answered, no. AR 1296-1297. These limitations

10 were not included in plaintiff's RFC.

11     The attorney for plaintiff asked the VE whether odd behavior would change the VE's

12 opinion, and the VE responded: "if a person is having odd behavior and it is distracting

13 to coworkers and it is going to persist more than once or twice it is likely the person

14 would terminated." AR 1344. Plaintiff's attorney also asked the VE whether a person

15 who had difficulty grasping even simple, repetitive job tasks and are not able to grasp or

16 remember those concepts – would that be tolerated in a competitive work environment?

17 AR 1344. The VE responded, "I think after 30 days if a person was continuing to

18 struggle and they are not remembering – what we are really talking about is a situation

19 where the person needs to be in sheltered work like a sheltered work shop." AR 1345.

20     The ALJ failed to include important limitations in the RFC – plaintiff was

21 hallucinating regularly and going to the emergency room at least once per month during

22 2021-2022. In addition, there is evidence in the record that plaintiff had anxiety not only

23 from her mental health conditions, but also drug side effects. There were no questions

17

from the ALJ about any drug side effects, and how the medications plaintiff was taking may or may not affect her RFC. When plaintiff answered, "I don't know", during her hearing, AR 1282-1349, this was consistent with how she presented in the ER during Mary 2022. Plaintiff was experiencing symptoms of anxiety, depression, and drug induced akathisia. AR 5407-5414, 5730-5778, 5811. On September 15, 2022, at another ER visit, Dr. Natalie Reynolds noted, "patient is bipolar and is a very difficult historian", and also observed, "patient is very slow to answer questions, occasionally answers nonsensically". AR 5730-5731. Other notes from care providers in the ER indicated on September 15, 2022 show plaintiff was malnourished – she appeared to be in a depressed state; she was taking a long list of medications; due to chronic illness she had not been eating. AR 5740-5772. The record shows that at the time of plaintiff's hearing, on August 4, 2022 (AR 1304-1349), plaintiff testified her symptoms were as reflected in documents of the physicians and other medical professionals, describing her struggle to communicate and the symptoms she and her daughter were describing during plaintiff's multiple ER visits and counselling sessions.

D. **Whether the Court should reverse with a direction to award benefits**

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d 648, 668 (9th Cir. 2017).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's subjective testimony. The record is complete; there is no ambiguity and the Court has found several errors in the ALJ's evaluation of plaintiff's statements about symptoms and limitations, and the medical opinion evidence. *Garrison*, 759 F.3d at 1021-22, (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

The ALJ would be required to find plaintiff disabled on remand, because if the Court credits plaintiff's statements and testimony as true, and also credits the medical opinion evidence as true, she would not be able to work in the occupations identified by the VE

and she would meet the criteria for disability. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits."). Dr. Ruddell found several marked limitations: plaintiff's ability to perform activities on schedule, regularly attend work, and to be punctual; plaintiff's ability to learn new tasks; plaintiff's ability to adapt to changes in a routine work setting; plaintiff's ability to complete a normal workday, work week, "without interruptions from psychologically based symptoms". AR 4468. Dr. Wheeler found several severe limitations -- performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances without special supervision; ability to communicate and perform effectively in a work setting; ability to complete a normal workday and work week without interruptions from psychologically based symptoms. AR 2293-2297.

Accordingly, remand for an award of benefits is the appropriate remedy.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for an award of benefits.

Dated this 15th day of November, 2023.

Theresa L. Fricke
United States Magistrate Judge